*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CJM, Minor.

FOR PUBLICATION
November 21, 2024
10:08 AM

No. 367565
Oceana Circuit Court
Family Division
LC No. 21-015038-NA

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

MARIANI, J.

Respondent appeals by right the trial court's order terminating his parental rights to his minor child, CJM, pursuant to MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent).[1] Respondent does not challenge the trial court's determination that these statutory grounds for termination were present, but contends the court clearly erred in determining that termination was in CJM's best interests. Because, in making that determination, the trial court failed to duly consider whether CJM was placed with a relative at the time of termination, we vacate the trial court's best-interests determination and remand for further consideration of CJM's best interests in light of his placement.

## I. BACKGROUND

These child-protective proceedings began on December 7, 2021, when the Department of Health and Human Services (DHHS) filed a petition seeking removal of CJM from respondent's care and jurisdiction over the minor child. DHHS alleged that, since November 2020, CJM had been living with Cassondra Pulsipher, who did not have the proper legal authority to provide care

---

[1] The Department of Health and Human Services (DHHS) also requested termination under MCL 712A.19b(3)(c)(*ii*) (failure to rectify other conditions), but the trial court did not find that this statutory basis had been proven by clear and convincing evidence.

-1-

for CJM; CJM was behind on his medical checkups and vaccines; and CJM was recently taken to the hospital by Pulsipher for emergency treatment after he ingested methamphetamine while in his mother's care.[2] DHHS alleged that respondent could not provide immediate care for CJM because he was incarcerated, and he had made no arrangements to ensure that CJM received proper care while he was incarcerated. DHHS could not formally recommend that CJM be placed with Pulsipher because she was not related to CJM and DHHS's policies at that time required it to "utilize a licensed foster home" if it was unable to "find an appropriate relative," but DHHS employees indicated that Pulsipher had provided CJM adequate care since his birth in November 2019 and would continue to do so if the court were to directly place CJM in her care.

The trial court granted DHHS's request to remove CJM from respondent's care, and it directly placed CJM in Pulsipher's care. Rather than authorize DHHS's petition, however, the trial court adjourned the proceedings; this was largely because CJM's mother had filed a motion to establish Pulsipher as CJM's limited legal guardian immediately prior to the proceedings, which respondent supported, and the matter was still pending before the court. CJM's mother ultimately did not appear for the guardianship hearing, however, so the motion did not move forward. The court authorized DHHS's petition in February 2022, and it ordered that CJM remain placed with Pulsipher and that respondent, who had been released from prison shortly after the preliminary hearing in December 2021, receive supervised parenting time with CJM.

The trial court conducted an adjudication hearing in May 2022, and respondent entered a plea to the court's exercise of jurisdiction pursuant to MCL 712A.2(b)(1) (reason to believe child at substantial risk of harm) and (b)(2) (unfitness of parental home). Respondent pleaded no contest to DHHS's allegations that he was incarcerated at the time that the petition was filed and that he was unable to provide for CJM's immediate needs. The trial court exercised jurisdiction, continued respondent's supervised parenting time, and ordered DHHS to engage in reasonable efforts toward reunification. DHHS created a case service plan, which the trial court adopted. The trial court ordered respondent to participate in and benefit from substance-abuse treatment and a parenting education and supportive visitation program. The court also ordered respondent to complete substance-abuse and psychological evaluations, submit to random drug screenings, obtain and maintain suitable housing, and participate in parenting time.

Throughout the proceedings, respondent struggled with participation in the case service plan. Respondent was referred to substance-abuse services at least five times, but he never attended the services. Respondent participated in random drug screens, all of which were completed immediately prior to parenting time, but he consistently tested positive for methamphetamine. Respondent was referred to a program to assist him in obtaining suitable housing, but the service was terminated due to his failure to participate. Respondent was subsequently referred to another program for assistance in housing and had reported that he had obtained suitable housing, but, upon visiting the home, respondent's parole officer determined that the home was uninhabitable. Respondent was referred to a supportive foster care visitation and education program to assist him with parenting skills, but he missed four appointments and faced

---

[2] CJM's mother was a respondent throughout this case, and her parental rights to CJM were also terminated by the trial court. CJM's mother is not a party to this appeal.

dismissal from the program for lack of participation. Respondent generally acted appropriately at parenting times and demonstrated a bond with CJM, but his attendance was inconsistent, and he stopped attending parenting times entirely in July 2022. Of the parenting times that respondent attended, he was often under the influence of methamphetamine. CJM struggled significantly with respondent's inconsistency, and he demonstrated more emotional stability after respondent stopped attending parenting times entirely. By mid-August 2022, respondent had been reincarcerated for new criminal charges and various parole violations after he had been found trespassing with drug paraphernalia and "a BB gun . . . with the red cap taken off the top of it" in his possession. It was unknown at the time when respondent would be released from prison.

On October 31, 2022, DHHS—at the trial court's direction—filed a supplemental petition requesting termination of respondent's parental rights pursuant to MCL 712A.19b(3)(c)(*i*), (c)(*ii*), and (j). At the termination hearing in February 2023, respondent's caseworker testified that DHHS had provided numerous services to respondent, but respondent failed to participate in or benefit from the services. Respondent was repeatedly referred to substance abuse services and completed some initial assessments, but he never "follow[ed] through with the actual service recommendations." Though he demonstrated sobriety for approximately two months following his release from prison, respondent consistently tested positive for methamphetamine since March 2022. Respondent reported that he was participating in a substance abuse program following his reincarceration in August 2022, but his caseworker was unable to verify his participation in the program. Respondent was incarcerated for a substantial portion of the case, but during the eight months that he was not incarcerated, he never obtained suitable housing. Respondent frequently jumped between temporary living arrangements, which he acknowledged were inappropriate for CJM. Respondent briefly lived in a trailer, but his parole officer determined that the trailer was uninhabitable and that he was residing on the property without the permission of the property owners. Though respondent demonstrated "some benefit" from the supportive foster care visitation and education program, he never completed the program. Respondent's outward behavior was appropriate during parenting times, but he repeatedly attended parenting times under the influence of methamphetamine. Respondent inconsistently attended parenting times until he stopped attending them entirely in July 2022.

Respondent's caseworker testified that termination was in CJM's best interests. The caseworker acknowledged that there was "some bond" between respondent and CJM and that CJM appeared to recognize respondent as his father, but she emphasized that CJM had "never been under the care of [respondent] since he was born," whereas Pulsipher had been CJM's primary caregiver since birth. CJM also had a very close bond with Pulsipher and considered her to be his mother, and Pulsipher expressed interest in adopting CJM. Respondent's counsel inquired about the possibility of a permanent guardianship with Pulsipher, but the caseworker stated that DHHS believed that Pulsipher's adoption of CJM was in CJM's best interests and that DHHS would not consider guardianship until it had exhausted the possibility of adoption.

Following the termination hearing, the referee recommended termination of respondent's parental rights. The referee found that statutory grounds for termination pursuant to MCL 712A.19b(3)(c)(*i*) and (j) were established by clear and convincing evidence, repeatedly emphasizing that respondent failed to participate in or benefit from the services provided by DHHS. The referee also found that termination of respondent's parental rights was in CJM's best interests. The referee found that respondent's continued substance abuse affected his ability to

parent, noting that he inconsistently attended parenting times, attended many parenting times under the influence of methamphetamine, and was currently reincarcerated due to criminal behavior related to his substance abuse. The referee noted that respondent's inconsistent attendance at parenting times greatly affected CJM's emotional stability, and she found that respondent could not offer stability to CJM at that time given his continued substance abuse and frequent periods of incarceration. The referee recognized that there was a bond between CJM and respondent but found that the bond was "minimal" and greatly outweighed by CJM's need for an "appropriate, drug free, and consistent" environment. The referee recommended that CJM remain placed with Pulsipher under DHHS's supervision until her adoption or guardianship of CJM could be finalized. The trial court adopted the referee's recommendations and entered an order terminating respondent's parental rights in February 2023. This appeal followed.

## II. STANDARD OF REVIEW

We review for clear error a lower court's decision that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). A finding is clearly erroneous if, even if some evidence supports the finding, the reviewing court is nevertheless left with the firm and definite conviction that the lower court made a mistake. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). This Court gives deference "to the special ability of the trial court to judge the credibility of witnesses." *In re Medina*, 317 Mich App 219, 227; 894 NW2d 653 (2016) (quotation marks and citation omitted). This Court "review[s] de novo the interpretation and application of statutes and court rules." *Mason*, 486 Mich at 152.

## III. BEST INTERESTS

On appeal, respondent does not challenge the trial court's finding that the statutory grounds for termination of his parental rights were established by clear and convincing evidence and, instead, only challenges the trial court's finding that termination was in CJM's best interests.

When determining whether termination is in the best interests of the child, the court should place its "focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). "The trial court should weigh all the evidence available to determine the children's best interests," and it should consider a variety of factors, including "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014) (quotation marks and citation omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *Id*. at 714. "The trial court may also consider how long the child was in foster care or placed with relatives, along with the likelihood that the child could be returned to the parents' home within the foreseeable future, if at all." *In re Mota*, 334 Mich App 300, 321; 964 NW2d 881 (2020) (quotation marks, citation, and alteration omitted). "[A] child's placement with relatives is a factor that the trial court is required to consider when making its best-interests determination, and a child's placement with relatives weighs against termination." *Id*. (quotation marks and citations omitted).

Respondent argues, among other things,[3] that the trial court clearly erred by failing to consider whether Pulsipher was a "relative" of CJM as defined by MCL 712A.13a(1)(j), and therefore whether CJM's placement with her weighed against termination of his parental rights. We agree.

MCL 712A.13a(1)(j)'s definition of "relative" was recently amended, with its new version taking effect approximately four months prior to the termination hearing in this case. See 2022 PA 200, effective October 7, 2022. Relevant to this case, the amendment expanded the definition of "relative" to include certain "fictive kin"—namely, any "individual who is at least 18 years of age" and is "[n]ot related to a child within the fifth degree by blood, marriage, or adoption but who has a strong positive emotional tie or role in the child's life or the child's parent's life if the child is an infant, as determined by the department." MCL 712A.13a(1)(j)(*ii*). See also, e.g., *In re Dixon (On Reconsideration)*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363388); slip op at 9 n 2 (noting that the significant other of the child's father qualified as the child's " 'fictive kin' " relative under the amended version of MCL 712A.13a(1)(j)).

The trial court did not consider whether Pulsipher fit the "fictive kin" definition of "relative" within MCL 712A.13a(1)(j)(*ii*), but the record in this case, as it now stands, suggests that she did. It was undisputed throughout the proceedings that Pulsipher regularly cared for CJM since birth, and the caseworker testified at the termination hearing that CJM considered Pulsipher to be his mother. DHHS specifically requested that the court directly place CJM in Pulsipher's care due to their close relationship, and the trial court itself had referred to Pulsipher as CJM's "fictive kin." There is thus ample basis in the present record to conclude that Pulsipher constituted a "relative" under the version of MCL 712A.13a(1)(j) applicable when respondent's parental rights were terminated—which, in turn, would mean that CJM was in the care of a relative at the time of termination, and the trial court, when making its best-interests determination, was required to expressly consider CJM's placement with Pulsipher as weighing against termination. See *Mota*, 334 Mich App at 321.[4] These considerations were wholly absent from the trial court's best-

---

[3] In light of our disposition here, we need not address respondent's other criticisms of the trial court's best-interests determination. We note, however, that we do not presently see particular merit in them. Respondent, for instance, contends that the trial court failed to duly recognize that there was no permanency benefit to CJM in terminating his parental rights, stressing that he had a bond with CJM, posed no threat of harm to CJM, and behaved appropriately during parenting times. Respondent maintains that, instead of terminating his rights, the trial court should have left them intact while pursuing a guardianship with Pulsipher. The record, however, reflects that the trial court considered respondent's relationship with and effect on CJM, and that the possibility of a guardianship was discussed throughout the proceedings. Respondent's criticisms do not reveal a clear error in how the trial court handled these discrete matters. That said, for the reasons discussed herein, the trial court's failure to duly consider the role of relative placement rendered its best-interests assessment erroneously incomplete, and remand is necessary for the court to properly account for that consideration and reassess if termination is in CJM's best interests.

[4] Our dissenting colleague posits that, because CJM was an infant when first placed with Pulsipher, the emotional ties between Pulsipher and CJM and the role she played in CJM's life do not bear

-5-

interests determination. And, as this Court has made clear, "[a] trial court's failure to explicitly address whether termination is appropriate in light of the child[]'s placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal." *Olive/Metts Minors*, 297 Mich App at 43. Accordingly, we must vacate the trial court's best-interests determination and remand for further consideration of CJM's best interests in light of his placement with Pulsipher.

## IV. CONCLUSION

We vacate the trial court's best-interests determination and remand for further proceedings consistent with this opinion. We retain jurisdiction.

/s/ Philip P. Mariani
/s/ Michael F. Gadola

---

on whether she constitutes a "relative" under MCL 712A.13a(1)(j)(*ii*); instead, "the appropriate analysis . . . would be the existence of strong emotional ties between Pulsipher and respondents." We disagree with this construction of the statute. Under MCL 712A.13(1)(j)(*ii*)'s plain terms, what matters to the "relative" assessment is whether the individual in question has (1) "a strong positive emotional tie or role in the child's life *or*" (2) "a strong positive emotional tie or role in . . . the child's parent's life if the child is an infant." (Emphasis added.) The statute does not purport to limit the first of these options only to non-infant children (instead making clear through its second option that the term "child" comprises infants), or to categorically foreclose consideration of the connection between an infant child and an individual in assessing that individual's status as a "relative." Instead, the statute creates two alternative paths for an individual to attain "relative" status when the child at issue is an infant—through the individual's connection with the life of the infant child, or through the individual's connection with the life of the infant child's parent. Accordingly, Pulsipher's "strong positive emotional tie or role in [CJM]'s life" would be enough in itself for her to constitute a "relative" under MCL 712A.13a(1)(j)(*ii*), regardless of the existence of any such tie or role in respondent's life.

-6-

# Court of Appeals, State of Michigan

# ORDER

Michael F. Gadola
Presiding Judge

In re C J McCallum Minor

Docket No. 367565

Kirsten Frank Kelly

LC No. 21-015038-NA

Philip P. Mariani
Judges

For the reasons stated in the opinion issued with this order, we REMAND this case for further proceedings. We retain jurisdiction. After the remand proceedings conclude, we will review the decisions that the trial court made during those proceedings and consider any remaining issues in this appeal. Any challenges to the trial court's decisions on remand must be raised in this appeal. Therefore, the parties and the trial court must not initiate a new appeal from an order entered on remand within the scope of this appeal. The Clerk of the Court is directed to reject the initiation of a new appeal from such an order.

Appellant must initiate the proceedings on remand within 28 days of the Clerk's certification of this order, and the trial court must prioritize this matter until the proceedings are concluded. As stated in the accompanying opinion, the trial court must reconsider whether the termination of respondent's parental rights is in CJM's best interests in light of CJM's placement with Cassondra Pulsipher and the definition of "relative" under MCL 712A.13a(1)(j)(ii). The proceedings on remand are limited to this issue.

The parties must serve copies of their filings in the trial court on this Court. Appellant must file with this Court copies of all orders entered on remand within seven days of entry.

Appellant must ensure the transcript of all proceedings on remand is filed in the trial court and this Court within 21 days after completion of the proceedings.

Presiding Judge

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

November 21, 2024
Date

Chief Clerk